## BALL v. UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

No. 1351. Argued April 10, 1891. — Decided April 27, 1891.

On the 4th of December, 1888, the clerk of the District Court of the United States for the Eastern District of Texas, at Galveston, certified to the Circuit Judge for the fifth circuit that the District Judge of that district was "prevented by reason of illness from continuing the holding of the present November term of the District and Circuit Courts of the United States for the Eastern District of Texas, at Galveston; and also the coming terms of said courts at Tyler, Jefferson and Galveston, in the year 1889." Thereupon the Circuit Judge issued an order designating and appointing "the judge of the Western Judicial District of Louisiana to conclude the holding of the present November term of the District and Circuit Courts for the Eastern District of Texas, at Galveston, and also to hold the coming terms of the District and Circuit Courts in said Eastern District of Texas, during the year 1889, and during the disability of the judge of said district, and to have and exercise within said district during said period, and during such disability, the powers that are vested

Statement of the Case.

by law in the judge of said district." On the 12th of March, 1889, Congress created a new division of the Eastern Judicial District of Texas, the courts to be held at Paris, Texas, and with " exclusive original jurisdiction of offences " committed within a designated portion of Indian Territory attached to that district, and directed two terms to be held, one in April, and one in October. 25 Stat. p. 786, c. 333, § 18. Under the authority so given the judge of the Western District of Louisiana held the Circuit Court at Paris in October, 1889, during which term persons were tried and convicted of the offence of murder, committed in that part of the Indian Territory; and on the following April term they were sentenced to death. Before that term commenced, the regular District Judge of that district died. *Held*, that in holding the October term, the judge acted as a judge *de jure;* and during the April term, if not *de jure*, as a judge *de facto*, whose acts could not be attacked collaterally.

On a Sunday morning a jury returned a verdict of guilty against persons on trial for murder, whereupon the court remanded them to custody to await judgment and sentence. *Held*, that this was not a judgment, but only a remand for sentence.

At common law it was essential in a trial for a capital offence, that the prisoner should be present, and that it should appear of record that he was asked before sentence whether he had anything to say why it should not be pronounced.

An indictment for murder which fails to aver the time of the death is fatally defective if found more than a year and a day after the death.

An indictment for murder which fails to aver the place of the death is also fatally defective.

This writ of error was sued out on time.

BY stipulation between counsel, an order made by the Circuit Judge for the Fifth Circuit, on the 4th of December, 1888, was added to the record in this case, which order is as follows:

" Whereas, it appears by the certificate of the clerk of the District Court hereto annexed, that the Hon. Chauncey B. Sabin, United States District Judge for the Eastern District of Texas, is prevented by reason of illness from continuing the holding of the present November term of the District and Circuit Courts of the United States for the Eastern District of Texas, at Galveston, and also the coming terms of said courts at Tyler, Jefferson and Galveston in the year 1889; and whereas, in my judgment, the public interests require the designation and appointment of a district judge from another

district within the circuit to hold the present and coming terms of the District and Circuit Courts in said Eastern District during the disability of the judge of said district:

"Now, therefore, I, Don A. Pardee, Circuit Judge of the Fifth Judicial Circuit, in pursuance of law, do hereby designate and appoint the Hon. Aleck Boarman, Judge of the Western Judicial District of Louisiana, to conclude the holding of the present November term.of the District and Circuit Courts for the Eastern District of Texas, at Galveston, and also to hold the coming terms of the District and Circuit Courts in said Eastern District of Texas, during the year 1889, and during the disability of the judge of said district, and to have and exercise within said district during said period, and during such disability, the powers that are vested by law in the judge of said district.

"Witness my hand at Galveston, December 4, 1888.

"Don A. Pardee, *Circuit Judge.*"

The certificate annexed was under the hand of "C. Dart, clerk U. S. Dis. Court, Eastern Dist., Texas, at Galveston," and the seal of the court, and set forth "that the Hon. Chauncey B. Sabin, United States District Judge for the Eastern District of Texas, is prevented by reason of illness from continuing the holding of the present November term of the District and Circuit Courts of the United States for the Eastern District of Texas, at Galveston; and also the coming terms of said courts at Tyler, Jefferson and Galveston, in the year 1889."

The certificate and order were certified to by Mr. Dart, December 22, 1890, and that they were filed by him December 4, 1888, and recorded on the minutes of the District Court in the clerk's office.

At this time the Statute directed that the courts of the Eastern Judicial District of Texas should be held twice in each year at Galveston, Tyler and Jefferson. 20 Stat. 318, c. 97. By section 18 of an act of Congress approved March 1, 1889, 25 Stat. 786, c. 333, § 18, two separate terms of the Circuit Court at Paris in the same district were established, to be held

on the third Monday of April and the Second Monday of October, and it was provided that "the United States courts herein provided to be held at Paris shall have exclusive original jurisdiction of all offences committed against the laws of the United States within the limits of that portion of the Indian Territory, attached to the Eastern Judicial District of the State of Texas by the provisions of this act, of which jurisdiction is not given by this act to the court herein established in the Indian Territory," etc. By section 19 of the same act it was provided that the judge of the Eastern Judicial District should appoint a clerk of the court, who should reside at the city of Paris, and H. H. Kirkpatrick was appointed such clerk. The October term, 1889, of the Circuit Court at Paris fell on the 14th day, being the second Monday, of that month, and was opened and held by Judge Boarman, assuming to act under the appointment of December 4, 1888, no record of which appeared on the minutes of the court in the clerk's office at Paris.

Upon the 17th of October, 1889, an indictment was returned into the Circuit Court against the plaintiffs in error and one M. F. Ball, which set forth:

"That one M. F. Ball and one J. C. Ball and one R. E. Boutwell, whose names are to the grand jurors otherwise unknown, late of the county of Pickens, in the Chickasaw Nation, in the Indian Territory, in the district and circuit aforesaid, on the twenty-sixth day of June, in the year of our Lord eighteen hundred and eighty-nine, in said Pickens County, in said Chickasaw Nation, in the Indian Territory, the same being annexed to and constituting a part of the said Fifth Circuit, and annexed to and constituting part of the Eastern District of Texas, for judicial purposes, and being within the jurisdiction of this court, did unlawfully, fraudulently and feloniously, and with their malice aforethought, and with a certain deadly weapon, to wit, a certain gun in the hands of the said M. F. Ball, J. C. Ball and R. E. Boutwell, then and there held, make an assault in and upon the body of one William T. Box with said gun held as aforesaid, said gun being then

and there loaded and charged with gunpowder and leaden balls, then and there held and used as aforesaid, the said M. F. Ball and the said J. C. Ball and the said R. E. Boutwell did shoot off and discharge the contents of said gun in and upon the body of the said William T. Box, inflicting thereon ten mortal wounds, of which mortal wounds the said William T. Box did languish, and languishing did die.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do say, that upon the day aforesaid, at the place aforesaid, with said deadly weapon aforesaid, in the manner aforesaid, and used as aforesaid, did unlawfully, feloniously and with their malice aforethought, and the malice aforethought of each of them, did kill and murder the said William T. Box, the said M. F. Ball and J. C. Ball and R. E. Boutwell, and each of them, being there, white men and not citizens of said Chickasaw Nation, or of the Indian Territory, or any nation or tribe thereof; contrary to the form of the statutes of the United States of America in such cases made and provided, and against the peace and dignity of the United States of America."

The defendants were arraigned on the 30th of October, and after moving for separate trials, which were denied, pleaded not guilty, and, a jury having been empanelled, trial was entered upon and continued October 31 and November 1 and 2, on which last day the jury retired to consider of their verdict. The record of Sunday, November 3, is as follows:

"This day came the United States by her attorney, and the defendants in their own proper persons and by attorneys came, and the jury of twelve good and lawful men which heretofore had been tried, empanelled and sworn as required by law, and having heard the evidence and argument of counsel and received the charge of the court, and having on a former day of this term retired to consider of their verdict, on this day brought into open court their verdict in words and figures as follows, to wit:

"'We, the jury, find the defendants J. C. Ball and R. E. Boutwell, guilty as charged in this indictment, and we find M. Filmore Ball not guilty.

"'Nov. 3d, 1889.                    A. P. Ball, Foreman.'

" It is therefore considered by the court that the defendants
J. C. Ball and R. E. Boutwell are guilty as charged in the
indictment herein and as found by the jury, and it is ordered
that they be remanded to the custody of the marshal and be
by him committed to the county jail of Lamar County, to
await the judgment and sentence of the court.  It is further
ordered that the defendant M. F. Ball be discharged and go
hence without day."

A bill of exceptions to the action of the court in the admis-
sion of certain testimony over defendants' objection, was taken
on the 31st of October, and is referred to as " No. 1."

On the 15th of November, 1889, a motion " for a new trial
and to arrest the judgment" was filed, which, among other
causes, assigned error as set forth in the bill of exceptions just
referred to; and also error as shown by bill of exceptions No. 2,
which does not appear in the record; and also error in instruct-
ing the jury on Sunday morning to return a verdict on that
day, as shown by bill of exceptions No. 3, which also does not
appear.  A separate motion in arrest of judgment was also
filed November 15, 1889, but whether with the other motion is
not clear.  This motion was not signed by the defendants, but
commenced : " And now come the defendants, John Ball and
Robert Boutwell, in their own proper person and by their
attorneys," and assigned various reasons why judgment should
be arrested, and particularly that Judge Boarman had no law-
ful authority to act as the judge of the Circuit and District
Courts for the Eastern District of Texas, holding sessions at
Paris, because Judge Sabin was the duly and lawfully appointed
and qualified judge of said court, and Judge Pardee the duly
and lawfully appointed and qualified judge of the Fifth Judicial
Circuit, and that neither of them were in any manner disquali-
fied from holding those offices or performing the duties thereof,
and that there was no evidence shown to the Circuit Judge or
the Circuit Justice that Judge Sabin was disabled to hold the
United States Circuit Court at Paris, begun and held on the
14th of October, 1889, or to perform the duties of his office,
nor had any such fact been made to appear by the certificate
of the clerk of said court under the seal of the court to the

Circuit Judge or Circuit Justice, nor was there any order of such judge or justice designating and appointing Judge Boarman to discharge the judicial duties of Judge Sabin for the United States courts holding sessions at Paris, nor was such appointment filed in the clerk's office and entered on the minutes thereof, etc.

On the same day the record states: "The motion of the defendants for a new trial and in arrest of judgment herein coming on to be heard, because it is the opinion of the court that the law is against the motion, the same is overruled, to which ruling of the court the defendants excepted." The record then contains the following: "By reason of the law and the evidence and the verdict of the jury in this case, it is ordered and adjudged that the defendants, Robert E. Boutwell and John C. Ball, be executed by being hung, until each and either are dead, according to the forms, delays and processes provided in the laws of the United States. This done and signed in open court Nov. 15, 1889. Aleck Boarman, Judge." This is endorsed, "Filed Nov. 15, 1889. H. H. Kirkpatrick, Clerk," and is followed by this entry: "This day the defendants in open court excepted to the sentence of the court this day pronounced upon them."

A bill of exceptions was filed November 22, 1889, reciting that on the 15th of November the motion of the defendants in arrest of judgment came on to be heard and was read, and "the court stated that such an order assigning & appointing the Hon. Aleck Boarman to hold the Circuit & District Courts referred to in said motion had been made, and was entered on the minutes of the District and Circuit Courts of the United States for the Eastern District of Texas, at Galveston, in the State of Texas, and thereupon overruled said motion," and the defendants duly excepted. The bill of exceptions continued:

"On the trial of the motion to arrest the judgment and sentence in this case the court did not refuse the defendants an opportunity of showing, by evidence, that the order designating myself as the judge to hold this term of the court in place of Judge Sabin, was not of record at Paris, Texas. The court, not prohibiting them from tendering evidence on that point,

said it was known to the court that a proper order authorizing this judge to hold the terms of court in the District and Circuit Court of the Eastern District in Texas, Fifth Circuit, was executed, signed and properly recorded at Galveston, Texas, which is one of the places for holding courts in the Eastern District. The court further held as above, because if it had been proved that such an order was not on record in the clerk's office at Paris, it would have had no weight in considering the allegations in the motion for arrest, because the order, to the knowledge of the judge, had been properly issued and was duly recorded or entered at Galveston in accordance with his instructions."

On the 30th day of March, Judge Sabin died, and Judge Boarman held the stated term of the Circuit Court for the Eastern District of Texas, beginning on the third Monday in April, until the second day of June, 1890, when Judge Bryant was sworn in as Judge Sabin's successor, and held court at Paris thereafter. On the 5th of May, 1890, Judge Boarman presiding, the United States attorney filed a motion that the court fix a day for the execution of the defendants, John C. Ball and Robert E. Boutwell, and on the 18th of July, 1890, at Paris, the defendants were brought into court before Judge Bryant, and each filed a motion in arrest of further proceedings and to vacate and set aside the orders and proceedings against him theretofore made, upon the principal ground of the want of legal authority on the part of Judge Boarman.

In support of the motion the record heretofore given was introduced by each defendant. The motion was overruled as to each, and each excepted, and a separate bill of exceptions was duly allowed, signed and filed, and the court rendered the same judgment against each, that against Ball being as follows:

"This day came the United States, by the United States attorney, and the defendant in his own proper person and by attorney appeared, and the United States attorney moved the court to fix a day of execution of the defendant, John C. Ball. And it appearing to the court that on the 15th day of November, 1889, during a former term of this court, the sentence of

death was pronounced upon the defendant, John C. Ball, for the crime of murder, in compliance with the law and the verdict of the jury rendered at that term of the court, to wit, on the third day of November, 1889, and that no petition for writ of error to the Supreme Court of the United States has been filed with the clerk of this court, and no other proper proceedings for a revision of the finding herein by the Supreme Court of the United States have been begun : It is therefore ordered, adjudged and decreed by the court that the defendant, John C. Ball, be now remanded to the custody of the marshal, to be by him kept securely confined in the jail of Lamar County, Texas, until Friday, the 19th day of December, 1890, when he shall be taken therefrom by the marshal, and between the hours of 12 o'clock M. and 4 o'clock P.M. of said 19th day of December, 1890, be hanged by the neck until he, the said John C. Ball, is dead, and the clerk of this court is ordered to issue a death warrant in accordance with this sentence, and deliver the same to the marshal, who shall execute the same according to law."

Thereupon the defendants procured an order allowing sixty days within which to apply for a writ of error, which writ was allowed within the time given, and the cause brought to this court.

*Mr. John E. Kenna* (with whom was *Mr. Charles J. Faulkner* on the brief) for plaintiff in error. *Mr. J. C. Hodges, Mr. Austin Pollard, Mr. R. F. Hodges* and *Mr. F. W. Minor* also filed a brief for the same.

*Mr. Solicitor General* for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The following errors are assigned upon the record or specified in the briefs of counsel: (1) That the indictment was fatally defective in not alleging when and where the victim died : (2) That the court erred in denying defendants' motion

for separate trials: (3) And in entering a joint judgment against defendants and a joint sentence of death, and that the alleged judgment and sentence were not entered according to law, and the motion in arrest should have been granted: (4) That Judge Bryant should have granted the motions filed by each of the defendants to vacate and set aside the prior proceedings: (5) That the court erred in refusing to allow the wives of the defendants to testify, "as shown by bill of exceptions No. 2:" (6) Because there was no record at Paris showing that Judge Boarman was ever designated, appointed and authorized to hold the Circuit Court at Paris, except as shown in the bill of exceptions filed November 22: (7) That Judge Boarman had no legal authority to hold court at Paris: (8) That the only judgment ever rendered against defendants was entered of record on Sunday, November 3, and was void for that reason: (9) That no judgment in legal form has ever been entered adjudging defendants guilty of murder: (10) That the alleged judgment of November 15 was no judgment: (11) That Judge Bryant had no power to hold any part of the April term, 1890, at Paris, because Judge Boarman held the first part of that term without authority: (12) That the court erred in admitting certain testimony, as shown by bill of exceptions No. 1.

The original appointment of Judge Boarman to hold terms of the District and Circuit Courts for the Eastern District of Texas was made by the Circuit Judge, December 4, 1888, under section 591 of the Revised Statutes, on account of the disability of Judge Sabin, upon the certificate of the clerk at Galveston, and related to the November term, 1888, at Galveston, and the coming terms at Tyler, Jefferson, and Galveston, in the year 1889, and was duly filed in the clerk's office, and entered on the minutes of the District Court, at Galveston.

The statute of March 1, 1889, provided for two terms of the Circuit Court, at Paris, in that district, and Judge Boarman held the October term, 1889, at that city, apparently under the same appointment, no certificate of disability having been made by the clerk at Paris, and no new appointment having been filed or recorded there, as, indeed, was the fact as to the

appointment of December 4, 1888. Under section 596, Revised Statutes, the Circuit Judge, whenever, in his judgment, the public interest so required, could designate and appoint, in the manner and with the powers provided in section 591, the District Judge of any judicial district within his circuit, to hold the District or Circuit Court in place of, or in aid of, any other District Judge within the same circuit. This section contemplates that the appointment made under it should state what court the appointee was to hold, and that it was in place of the judge of the District Court, or in aid of him; and that the appointment should be filed and entered on the minutes, as provided in section 591. )

Under section 602, when the office of judge of any District Court is vacant, all process, pleadings and proceedings pending before such court were continued, of course, until the next stated term after the appointment and qualification of his successor, except when that term might be held as provided in section 603. By the latter section, when the position of District Judge was vacant in any District Court in the State containing two or more districts, the judge of the other, or of either of the other districts, might hold the District Court or the Circuit Court in case of the sickness or absence of the other judges thereof, in the district where the vacancy occurred.

It was the opinion of Mr. Attorney General Black that the power to designate a District Judge to hold court in case of disability under section 591, as it originally existed in the act of July 29, 1850, 9 Stat. 442, c. 30, did not extend to the case of a vacancy. 9 Opinions Attys. Gen. 131. That opinion was given on the 23d of January, 1858, and by act of Congress of August 6, 1861, 12 Stat. 318, c. 59, the provision was made now embodied in section 603, Rev. Stat.

The State of Texas contained three districts, and Judge Boarman was not the District Judge of either. A vacancy was created by the death of Judge Sabin, March 30, 1889, yet Judge Boarman held the April term, 1890, until the succession of Judge Bryant. We are of opinion that the irregularities alleged did not place Judge Boarman, in holding the October term, in any other position than that of a judge *de*

*jure,* and that as to the April term, he was judge *de facto* if not *de jure,* and his acts as such are not open to collateral attack. *Norton* v. *Shelby County,* 118 U. S. 425; *In re Manning,* 139 U. S. 504; *Clark* v. *Commonwealth,* 29 Penn. St. 129; *Fowler* v. *Beebe,* 9 Mass. 231; *Commonwealth* v. *Taber,* 123 Mass. 253; *State* v. *Carroll,* 38 Connecticut, 449; *Keith* v. *State,* 49 Arkansas, 439; *People* v. *Bangs,* 24 Illinois, 184.

This view disposes of the sixth, seventh, and eleventh errors assigned, and requires us to consider whether the alleged judgment rendered by Judge Boarman on the 15th of November so far constituted a final lawful judgment and sentence of death against the defendants, that the writ of error cannot be maintained, because not sued out within the time provided by law. We proceed, therefore, to examine that question. By section 6 of the act of Congress of February 6, 1889, 25 Stat. 656, c. 113, it is provided that in all cases of conviction of crime, the punishment for which provided by law is death, tried before any court of the United States, a writ of error may issue for the revision of the final judgment of such court, if sued out upon a petition filed with the clerk of the court in which the trial shall have been had, "during the same term or within such time, not exceeding sixty days next after the expiration of the term of the court at which the trial shall have been had, as the court may for cause allow by order entered of record." The writ of error in this case was sued out within sixty days after July 18, 1889, that time having been duly allowed by order entered of record, but it was not brought during the October term of the Circuit Court, nor within sixty days after the expiration of that term. The record does not show when that was, but it must have been prior to the third Monday of April, when the April term commenced.

At common law no judgment for corporal punishment could be pronounced against a man in his absence, and in all capital felonies it was essential that it should appear of record that the defendant was asked before sentence if he had anything to say why it should not be pronounced. *Rex* v. *Harris,* 1 Ld. Raym. 267; 2 Hale P. C. 401; Com. Dig. Indictment, N;

2 Hawk. c. 48, § 22; Wharton, Cr. Pl. & Pr. §§ 549, 906; *Messner* v. *People*, 45 N. Y. 1; *Dougherty* v. *Commonwealth*, 69 Penn. St. 286; *Croker* v. *State*, 47 Alabama, 53; *James* v. *State*, 45 Mississippi, 572; *State* v. *Jennings*, 24 Kansas, 642; 1 Bish. Cr. Pro. §§ 275, 1293; 1 Chit. Cr. Law, 699.

In *Hamilton* v. *The Commonwealth*, 16 Penn. St. 129, Chief Justice Gibson said: "We find no entry that the prisoner was demanded whether he had anything to say why sentence of death should not be pronounced on him, the absence of which was ruled in *Rex* v. *Geary*, 2 Salk. 630, and *The King* v. *Speke*, 3 Salk. 358, to be fatal. In fact, there is nothing on the docket to show even that the prisoner was present when he was sentenced, except the supplementary memorandum that 'he was present in court during every stage of the trial, from the time of his arraignment up to the time when the sentence was passed by the Honorable Ellis Lewis, president judge of the court, on him. Indeed, the whole trial, from its commencement to its termination, was according to law.' A record is constituted of proper and legitimate elements set down in their order; for it is certainly not law that all the gossip a clerk or prothonotary writes down in his docket, *ipso facto* becomes the very voice of undeniable truth. The judges of a court of error must determine for themselves, and consequently on facts, instead of sweeping assertions. The premises to found a sentence of death are set forth in 1 Ch. Crim. L. 720, and the form of the entire record is given in 4 Bla. Com. App. 1, in which there is a demand of the prisoner 'if he hath or knoweth anything to say wherefore the said justices ought not, on the premises and verdict, to proceed to judgment and execution against him,' together with his answer, that he 'nothing further saith, unless as he before had said.' . . . The forms of records are deeply seated in the foundations of the law; and as they conduce to safety and certainty, they surely ought not to be disregarded when the life of a human being is in question. Our practice of rotation has excluded experience from the county offices, and it would, perhaps, be profitable were the presiding judge to superintend the entries. It would at least prevent our judicial records from becoming entirely barbarous."

The reasons for the rule of the common law, that the defendant should be personally present before the court at the time of pronouncing the sentence, are compendiously given by Mr. Justice Scholfield, in *Fielden* v. *The People*, 128 Illinois, 595, to be that the defendant might be identified by the court as the real party adjudged guilty; that he might have a chance to plead a pardon, or move in arrest of judgment; that he might have an opportunity to say why judgment should not be given against him; and that the example of being brought up for the animadversion of the court and the open denunciation of punishment might tend to deter others from the commission of similar offences. The same learned court held, however, in *Gannon* v. *The People*, 127 Illinois, 507, that while it was the better practice to call up the defendant to say why he should not be sentenced, yet the omission to do so was no ground for reversal in any case. But the great weight of authority is the other way.

On Sunday, the third of November, the record shows the return of the verdict finding "the defendants, J. C. Ball & R. E. Boutwell, guilty as charged in this indictment, and we find M. Filmore Ball not guilty," which is followed by these words: "It is therefore considered by the court that the defendants, J. C. Ball and R. E. Boutwell, are guilty as charged in the indictment herein and as found by the jury, and it is ordered that they be remanded to the custody of the marshal and be by him committed to the county jail of Lamar County to await the judgment and sentence of the court. It is further ordered that the defendant, M. F. Ball, be discharged and go hence without day." If this could be regarded as the judgment of the court, it was void because entered on Sunday. *Mackalley's Case*, 5 Coke, 111; *Swann* v. *Broome*, 3 Burrow, 1595; *Baxter* v. *People*, 3 Gilm. (8 Illinois) 368; *Chapman* v. *State*, 5 Blackford, 111. But it is clear that it cannot be treated as a judgment, and is in effect nothing more than a remand for sentence.

On November 15 this order was filed: "By reason of the law and the evidence and the verdict of the jury in this case, it is ordered and adjudged that the defendants, Robt. E.

Boutwell and John C. Ball be executed by being hung, until each and either are dead, according to the forms, delays and processes provided in the laws of the United States. This done and signed in open court Nov. 15, 1889.   Aleck Boarman, Judge."

It will be perceived that neither in the verdict, nor the order of November 3, nor that of November 15, is it stated of what offence the defendants were found guilty, nor does it appear, nor in our opinion is it fairly deducible from the record, that the defendants were present when the latter order was entered, and it is not pretended that they were asked, or either of them, what they had to say why sentence of death should not be pronounced upon them.   It is true that the record of November 15 has this entry : " This day the defendants in open court excepted to the sentence of the court this day pronounced upon them," but that admits fairly of the construction that the exception was entered by their attorneys, as does the motion in arrest, which though it states that the defendants came in their own proper person and by attorney, is signed only by the attorneys, the record being somewhat obscure as to the point of time during the day when this was done.

We do not think that the fact of the presence of the prisoners can by fair intendment be collected from the record, no mention being made to that effect in the order, it not appearing therefrom that the sentence was read or orally delivered to them, and the usual question not having been propounded. On the 18th of July, 1890, Judge Bryant entered separate orders, which recited that on the 15th day of November, 1889, the sentence of death had been pronounced upon each defendant for the crime of murder, in compliance with the law and the verdict of the jury rendered November 3, 1889, and it was "therefore ordered, adjudged and decreed" that each defendant should be hanged on the day specified therein, and that the clerk should issue a death warrant in accordance with the sentence, and deliver the same to the marshal to execute.

Although the matters referred to amount chiefly, if not wholly, to error merely, yet, in view of the character of the objections, we must hold that the judgment against these defendants did not become final until the entry of the orders

by Judge Bryant, and that as the writ of error was prosecuted within the sixty days given by him for the purpose, it ought not to be dismissed; and, retaining jurisdiction, we hold that the orders of November 15, 1889, and July 18, 1890, must be reversed for the errors indicated.

It may be that this leaves it open to us to remand the cause with an order to the Circuit Court to proceed and give judgment on the verdict, but we do not care to discuss this, as we are clear that the indictment is fatally defective, and that a capital conviction, even if otherwise regular, could not be sustained thereon.

The indictment charges an assault by the defendant upon one William T. Box with a loaded gun, and the infliction of mortal wounds by the discharge of its contents, " of which mortal wounds the said William T. Box did languish, and languishing died." This fails to aver either the time or place of the death. By the common law, both time and place were required to be alleged. It was necessary that it should appear that the death transpired within a year and a day after the stroke, and the place of death equally with that of the stroke had to be stated, to show jurisdiction in the court. The controlling element which distinguished the guilt of the assailant from a common assault was the death within a year and a day, and also within the same jurisdiction. Bac. Ab. Indictment, G. 4; *Commonwealth* v. *Macloon*, 101 Mass. 1; *Chapman* v. *The People*, 39 Michigan, 357, 360; *Riggs* v. *State*, 26 Mississippi, 51; *People* v. *Wallace*, 9 California, 31; 1 Bish. Cr. Pro. 3d ed. §§ 407, 408; 2 Id. § 534; Wharton, Homicide, 2d ed. §§ 845, 846.

In *United States* v. *Guiteau*, 1 Mackey 498, the Supreme Court of the District of Columbia was held to have jurisdiction to try, convict and sentence the murderer of President Garfield within the District of Columbia, although the death happened in New Jersey, the felonious blow having been struck in the District. The opinion of Mr. Justice Cox, upon the trial, and those of Mr. Justice James and Mr. Justice Hagner, speaking for the court in general term, learnedly discuss the question. An application having been made to Mr.

Justice Bradley of this court for a writ of *habeas corpus*, in giving his reasons for denying it, he said: "It is contended that the murder was committed only partly within the District of Columbia and partly within the State of New Jersey, and therefore cannot be said to have been committed within the District of Columbia. By the strict technicality of the common law this position would probably be correct, although Lord Chief Justice Hale, one of the greatest criminal lawyers and judges that ever lived, uses the following language: 'At common law,' says he, 'if a man had been stricken in one county and died in another, it was doubtful whether he were indictable or triable in either, but the more common opinion was that he might be indicted where the stroke was given, for the death was but a consequence, and might be found, though in another county, and if the party died in another county, the body was removed into the county where the stroke was given, for the coroner to take an inquest *super visum corporis*.' This case shows that in Lord Chief Justice Hale's opinion the principal crime was committed where the stroke was given, and that when the production of the dead body gave the jury ocular demonstration of the *corpus delicti*, the difficulty of jurisdiction was overcome. But to remove the doubt as to the power of jurors to try such a case, it was enacted by the statute 2 and 3 Edward VI, c. 24, that the murderer might be tried in the county where the death occurred; and to remedy the difficulty where the stroke, or the death, happened out of England, it was enacted by a subsequent statute, 2 George II, c. 21, that the trial might be in the county where the stroke was given if the party died out of the realm; or where the death occurred, if the stroke was given out of the realm; this, in effect, making the murder a crime in the county in which either the stroke was given or the death occurred. These statutes, as the Supreme Court holds, and as their reasoning satisfactorily shows, were in force in Maryland in 1801, when the Supreme Court was organized, and by the organic act of Congress became laws of the District of Columbia. If, therefore, the District had continued a part of the State of Maryland, with those laws in force, and if the murder in question had taken place exactly

as it did, it would have been considered a murder committed within the State of Maryland and within the county out of which the District was carved, and would have been indictable and triable in such county. When therefore Congress, in 1801, conferred upon the courts of the District jurisdiction to try all crimes and offences committed within the District, it gave jurisdiction to try the murder of which the prisoner has been found guilty, the present law being a mere codification of that enactment. For the same reason the crimes act of 1790, when it came to operate upon the District, became applicable to such a murder."

This subject received elaborate consideration in *Commonwealth* v. *Macloon, supra,* where all the common law authorities are cited, and the conclusion reached that the inquiry is properly determined by the existence of statutory provisions. See also *In re Palliser,* 136 U. S. 257, 265, and cases cited.

In *United States* v. *McGill,* 4 Dall. 426; S. C. 1 Wash. C. C. 463, Mr. Justice Washington and Judge Peters had no difficulty in holding that, to constitute the crime of murder on the high seas, the mortal stroke must be given and the death happen there, Congress not then having provided for such a case. And see *United States* v. *Armstrong,* 2 Curtis, 446; *United States* v. *Davis,* 2 Sumner, 482, 485.

By the Constitution, the accused in all criminal prosecutions has the right to be tried by an impartial jury of the State and district wherein the crime shall have been committed, but, when not committed within any State, the trial shall be at such place or places as Congress may by law have directed. Art. III, sec. 2; Amend. Art. VI.

By section 5339 of the Revised Statutes, it is provided that " every person who commits murder . . . within any fort, arsenal, dock-yard, magazine or in any other place or district of country under the exclusive jurisdiction of the United States . . . shall suffer death."

Sec. 731 provides: " When any offence against the United States is begun in one judicial district and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined and punished

in either district, in the same manner as if it had been actually and wholly committed therein." If this section is applicable to the crime of murder, it certainly could not apply if the stroke were given in one district and the death ensued in some other country than the United States.

The accused is entitled to be informed of the nature and cause of the accusation against him, and jurisdiction should not be exercised when there is doubt as to the authority to exercise it. All the essential ingredients of the offence charged must be stated in the indictment, embracing with reasonable certainty the particulars of time and place, that the accused may be enabled to prepare his defence and avail himself of his acquittal or conviction against any further prosecution for the same cause. Hence, even though these defendants might have been properly tried in the Eastern District of Texas, if the fatal stroke were inflicted there, though the death occurred elsewhere, yet, nevertheless, the averment of the place of death would still remain essential.

And while it may be conceded that as this indictment was found on the 17th of October, 1889, and the day of the assault is fixed as on the 26th of June of that year, and it is asserted that Box died, the failure to aver the time of death is not fatal, we hold that the omission to state the place is so. By section 1035 Rev. Stat. a party may be found guilty of any offence the commission of which is necessarily included in that with which he is charged in the indictment, or may be found guilty of an attempt to commit the offence so charged. The verdict found the defendants guilty as charged, and the order of November 15 used no other language. Defendants were well charged with assault, but not with murder, and the verdict must be held to have related only to that which was well charged, upon which no such judgment as that before us can be sustained.

*The judgments are reversed and the cause remanded, with a direction to quash the indictment, and for such further proceedings in relation to the defendants as to justice may appertain.*

MR. JUSTICE GRAY and MR. JUSTICE BREWER did not hear the argument and took no part in the decision of this case.