UNITED STATES

v.

Specialist Five (E–5) Edward R. STEW-ART, 442–52–2319, US Army, US Army Communications Command-Japan, Area Maintenance and Supply Facility, APO San Francisco 96331.

CM 434999.

U. S. Army Court of Military Review.

14 Dec. 1976.

Appellate Counsel for the Accused: CPT John M. Zoscak, Jr, JAGC; CPT D. David Hostler, JAGC; LTC John R. Thornock, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard A. Kirby, JAGC; CPT Richard S. Kleager, JAGC; MAJ John T. Sherwood, Jr., JAGC; COL Thomas H. Davis, JAGC.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

OPINION OF THE COURT

COOK, Senior Judge:

Appellant was found guilty, in conformity with his plea, by a trial judge, sitting as a general court-martial, of indecent assault, alleged as a violation of Article 134, Uniform Code of Military Justice (10 U.S.C. § 934). He received the sentence noted above.

The trial was held in Okinawa and terminated on 22 June 1976. On 28 June 1976 the record of trial was "authenticated" by "Trial Counsel, because of the absence of the military judge."

Records presented to this Court to aid it in its deliberations reveal that on 24 June the trial judge returned to his regular duty station, i. e., Seoul, Korea and did not return to Okinawa at any time prior to 21 September 1976.[1] These same records reveal that the trial judge was away from Korea for varying lengths of time for a maximum of 17 days during this 90-day period.

Applying the "emergency situation" gloss to the word "absence," in accordance with the guidance provided by the United States Court of Military Appeals in *United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 51 C.M.R. 723, 1 M.J. 429 (1976), this Court concludes that the trial judge was not absent and the authentication authority of Article 54(a), UCMJ, and paragraph 82f, Manual for Courts-Martial, United States, 1969 (Revised edition) was "impermissibly invoked by the trial counsel."[2]

Concededly, the trial judge was not present in Okinawa when the record was ready for authentication, and we are also

---

1. The significance of this date is that appellant apparently went into confinement (a request for deferment dated 22 June was denied 23 June) immediately after trial and the 90-day *Dunlap* requirement would have run on 21 September 1976. *See United States v. Manalo*, 24 U.S.C.M.A. 297, 52 C.M.R. 8, 1 M.J. 452 (1976).

2. *United States v. Cruz-Rijos, supra*, 24 U.S.C.M.A. at 273, 51 C.M.R. at 725, 1 M.J. at 431.

aware that he was not always available at his home station in Seoul, Korea. Additionally, this Court does not quarrel with the concept that it would have been less convenient to have arranged to send this record to the trial judge in Korea, a distance of some 1600 miles round trip, than it was to have the trial counsel perform the required authentication.

However, as the United States Court of Military Appeals said in *Cruz-Rijos,* ". . . [A] balance of . . . competing interests often is required. In striking the appropriate balance, the importance of the neutrality element in relation to the function performed is significant. In this regard, it must be borne in mind that the heart of the criminal proceeding is the trial transcript." [3]

We have weighed the competing factors in this case and are not persuaded that the distance involved; the peregrinations of the trial judge; or the "vagaries of the Postal

Service" [4] considered separately or in combination, can, in this case prevail over the appellant's right to have a record of trial prepared by a party neutral to the proceedings. Appellant is entitled to a record upon which he, appellate bodies, and all others who have a recognized requirement, can rely upon to "import [the] absolute verity" [5] which our system attributes to such records. Every reasonable effort must be made to create such a record. The record is barren of evidence that any such effort was made in this case.[6]

The action of the convening authority dated 16 July 1976, is hereby set aside. The record of trial is returned to The Judge Advocate General for proper authentication and a new review and action by the same or a different convening authority.[7]

Judge DRIBBEN and Judge DeFORD concur.

**3.** *Id.*

**4.** An expression we have pilfered from the Government counsel's brief, and have adopted here only for the purposes of argument. We have no reason to believe that the transmittal of mail matter is any more perilous, or even inefficient, between Okinawa and Korea than it is between any other two military commands. Vitally important military correspondence is, we are certain, safely and expeditiously transported between those two locations at regular and frequent intervals.

**5.** *United States v. Albright,* 9 U.S.C.M.A. 628, 632, 26 C.M.R. 408, 412 (1958); *United States v. Galloway,* 2 U.S.C.M.A. 433, 435, 9 C.M.R. 63, 65 (1953).

**6.** We feel it appropriate at this juncture to provide some guidance to the field that will aid all parties in the future processing of these cases. Heretofore, a presumption of regularity was applied by this Court when challenges were made to authentications performed by trial counsels, "in the absence of the military judge." *See United States v. Sims,* 50 C.M.R. 401 (A.C.M.R.1975); *United States v. Bumgarner,* 49 C.M.R. 770 (A.C.M.R.1974). In view of the extraordinarily qualified interpretation placed on the word "absence" as it is used in Article 54(a) UCMJ, and paragraph 82f, MCM, 1969 (Rev) by the United States Court of Military Appeals in *Cruz-Rijos,* and because it is the Government's sole responsibility to insure

that the record of trial is properly authenticated, staff judge advocates are advised not to rely upon the invocation by this Court of the presumption of regularity, but rather, they should provide a comprehensive explanation of the "emergency situation" that prompted the trial counsel's substitution for the military judge when relying on the "absence" provision.

**7.** We continue to apply this antidote to this problem principally because it is the one prescribed by our judicial superiors in the *Cruz-Rijos* decision. However, we are acutely sensitive to the fact that in this case, and in others of a similar nature which have arisen since that decision, we are dealing with only one of the two errors found to exist in the *Cruz-Rijos* case. Consequently, we entertain some qualms about the appropriateness of the redress mandated in that opinion. Our reservations are heightened by our awareness of an earlier opinion from the United States Court of Military Appeals, *United States v. Hill,* 22 U.S.C.M.A. 419, 47 C.M.R. 397 (1973), which though it appears applicable, was not alluded to in the *Cruz-Rijos* opinion. In the *Hill* case a majority of the court decided that, although it was error for the convening authority to take an action premised on a review which had been prepared from an unauthenticated record, such error should be tested for specific prejudice. The Court described how the examination for prejudice should be conducted in the following terms:

   "An advice prepared on the basis of an unauthenticated record can be checked for errors

or omissions against the authenticated record. If a change was made in the record between preparation of the advice and the record's authentication, its substance, not the fact of its making is the important consideration. The advice is erroneous only if it incorrectly represents the authenticated record, and it is ground to invalidate the action of the convening authority only if the error influenced the convening authority to the prejudice of the accused." 22 U.S.C.M.A. at 422, 47 C.M.R. at 400.

As suggested at the outset, were it not for the redress mandated in the *Cruz-Rijos* opinion, which we have compliantly applied in like (or partially like) cases ever since, we might very well adopt an approach which conforms with that set out in *Hill, supra*. The advantages to that approach are several:

1. Assuming that the military judge, in his belated perusal of the record prior to his authentication, does not inject any changes of substance, a new review and action will not have to be composed, transcribed, read, signed and published (to enumerate just a few of the labors involved in implementing the phrase "a new review and action"). Total post-trial review time at all levels would thereby be shortened, benefiting all parties involved.

2. The original action is not set aside as a matter of course. That result will occur only when the later authentication results in a change in the record which can be said to make the earlier review by the staff judge advocate an incorrect representation of the record and that erroneous representation influenced the convening authority to the defendant's prejudice. The setting aside of a convening authority's action results in the return to appellant of all monies withheld by virtue of the earlier action. Usually forfeitures cannot, as a practical matter, be recovered by a new valid action because the appellant is not usually, at that late point in time, still in a pay status. In short, appellants receive a windfall when actions are set aside unnecessarily.

3. It would appear that application of the *Hill* case approach is more nearly compatible with the language of Article 59(a) UCMJ.