**UNITED STATES**

v.

**Private (E-1) (Aaron W. SPERLING, 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, US Army, Headquarters and Headquarters Company, 7th Combat Engineer Battalion, 5th Infantry Division (Mechanized) and Fort Polk, Fort Polk, Louisiana 71459.**

**CM 434857.**

U. S. Army Court of Military Review.

18 Feb. 1977.

---

544

Appellate Counsel for the Accused: CPT Ralph E. Sharpe, JAGC; MAJ Richard J. Goddard, JAGC; MAJ Joe D. Miller, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Michael J. Hurley, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC.

Before CLAUSE, DONAHUE and COSTELLO, JJ.

## OPINION OF THE COURT

COSTELLO, Judge:

Upon his plea of guilty, appellant was convicted of rape, sodomy, attempted sodomy and escape from custody in violation of Articles 120, 125, 80, and 95, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 880 and 895, respectively. The

sentence as negotiated and approved is set out above.

Two problems are before us. The first is an attack on the providence of appellant's plea of guilty to the escape charge; the second is an assertion that the record of trial was not authenticated. We find merit in the first objection, but none in the second.

I

■ Appellant's plea of guilty was not provident as to the charge of escape from custody. *United States v. Care*, 18 U.S.C. M.A. 535, 40 C.M.R. 247 (1969); *United States v. Ellsey*, 16 U.S.C.M.A. 455, 37 C.M.R. 75 (1966).[1] We will dismiss that charge, but there is no other effect on the case from the finding of improvidence. The total absence of the escape charge from the trial level would not have affected Sperling's decision to plead guilty to the serious rapes and sodomies which were the principal charges against him. Further its absence would not have affected the sentence negotiations or its imposition. That charge and its punishment potential were simply inconsequential in the posture of this case. Therefore, we find that appellant suffered no injury from the mischaracterization of one relatively minor offense.

II

■ The second issue stems from appellant's assertion that the record of trial was not authenticated as required by Article 54, UCMJ, 10 U.S.C. § 854, and the rule in *United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 51 C.M.R. 723, 1 M.J. 429 (1976). The trial counsel here purported to authenticate the record "in the absence of" the military judge, but the judge was on that day enroute to Fort Polk from his circuit headquarters in San Antonio, Texas. He arrived at Fort Polk at 18:20 that evening.[2] To that extent, this case is similar to *Cruz-*

1. *See United States v. Bullard*, 40 C.M.R. 621 (A.C.M.R.1969). The confusion and difficulty caused by the two separate offenses could easily be eliminated by enactment of a statute similar to 18 U.S.C. § 751 in which no distinc-

tion is made between custody and confinement for escape purposes.

2. We rely on official travel documents filed with this Agency.

*Rijos.* It differs in that here we have an apparently reliable record of trial which has not been challenged in any particular, here or below. In *Cruz-Rijos*, on the other hand, the trial counsel had rebuilt the record by 800 corrections on 156 pages; then he authenticated his own work and the Court of Military Appeals found that the "absence" provision of Article 54 had been improperly invoked. The Court also ordered a new authentication.

This case also differs from *Cruz-Rijos* in that our trial judge has retired from active service and the trial counsel has been separated upon completion of his service obligation. We estimate that routine reassignment and these other actions affect one-third of the trial judiciary and counsel each year.

In any event, it is clear that the trial counsel in this case acted precipitately under the *Cruz-Rijos* standard and under the standards which were in effect at the time he acted. However, his action was not attended by the impropriety of *ex parte* modification of the record which marked the *Cruz-Rijos* situation. Therefore, we may consider whether we are bound to apply the same corrective measures our higher Court did. We think not.

The difference is in the nature of the trial counsel's action. In *Cruz-Rijos* his act was regarded as a nullity, but this case contains none of the defects which offended the *Cruz-Rijos* court. The action of this trial counsel, a public officer, was taken under color of authority in an otherwise proper manner and his act is a valid one.

> "[T]he rule is well settled that where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer *de facto* and binding on the public."

*McDowell v. United States,* 159 U.S. 596, 601–602, 16 S.Ct. 111, 40 L.Ed. 271 (1895); *Ball v. United States,* 140 U.S. 118, 129, 11 S.Ct. 761, 35 L.Ed. 377 (1891). The part of the public held bound in *McDowell* was a man whose conviction by a *de facto* federal district judge the Supreme Court affirmed.

*Ball* reached a similar result in a state judge case. If the conviction of crime by *de facto* judges may be sustained, why not the performance of a neutral act such as authentication?

Many points in the doctrine of recognition of the *de facto* acts of putative public officers can be endlessly disputed, so we will merely sketch the outline of our argument. The doctrine is one of those judicial fictions employed to achieve sensible results and preserve order in the public institutions. Our unique military requirements for an authenticated, verbatim record stem from the equally unique legal and factual review of trials required at the convening authority's level. The goal is a reliable, accurate record for those reviews by persons who did not attend the trial. We have such a record here and those officials acted properly in reliance on it. There is no reasonable expectation that any other result will come from repeating the process. Additionally, there is a high potential in military cases for perfectly reasonable trial outcomes to be vitiated by time and distance factors or happenstance. Finally, there is little or no danger that the Congressional mandate in Article 54 will be attenuated by our view. The Judge Advocate General's Memo on authentication procedures which was quoted with approval in *Cruz-Rijos* establishes military duties which will be performed by trial judges and promulgates policies which protect the views of the Court of Military Appeals. Thus, we are here reaching a reasonable solution for only those cases in the transition phase, *i. e.,* until the system was able to adjust to the new rules.

Thus, there is a good case for application of the *de facto* doctrine from its policy underpinnings. There is also a good case in routine legal analysis. The trial counsel is one of the persons eligible to authenticate records of trial. Article 54, *supra,* paragraph 82f, Manual for Courts-Martial, United States, 1969 (Revised edition). That function is a public duty " . . . to which a portion of the sovereignty of the state attaches for the time being"; the duty

to perform that function is therefore a public office. *Pope v. Commissioner of Internal Revenue*, 138 F.2d 1006, 1009 (6th Cir. 1943).

 A public office may be filled by one acting as such an officer, *de facto*. Thus, a conviction obtained by a "special" prosecutor was affirmed even though he was not a resident of the prosecutorial district as required by law. *Doss v. Lindsley*, 148 F.2d 22 (7th Cir. 1945) [*cert. den'd* 325 U.S. 858, 65 S.Ct. 1195, 89 L.Ed. 1978 (1945)]. *See also McDowell v. United States, supra* and *Watkins v. Pennsylvania*, 214 F.Supp. 913 (DC PA 1963) [possible defect in election of DA and judge immaterial]. The existence of a *de jure* officer does not preclude a finding that another has acted *de facto*, so long as they are not competing to fill the position. *Howard v. Burke*, 248 Ill. 224, 93 N.E. 775 (1911).

As we said earlier, the trial counsel here acted to discharge the duties of a public office under a color of title. Even though his title was imperfect, his act is good against the world. We hold that the record here was authenticated by the trial counsel, that it is an accurate record and that the subsequent acts of review and approval were properly taken.

 Accordingly, the finding of guilty of Charge IV and its specification is set aside and that charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, the Court affirms the sentence.

Judge DONAHUE concurs.

CLAUSE, Senior Judge, concurring in the result:

I do not believe that the circumstances of this case warrant a determination that paragraph 82f, MCM 1969 (Rev.), was impermissibly invoked by the trial counsel in authenticating the record "in the absence of" the military judge. The judge was absent at the time of the authentication and had been so absent for more than 17 days. There has been no showing or allegation

that the trial counsel was aware of the judge's imminent return. Under the law and practice then in effect I see no reason for requiring more in a simple guilty plea case which required only a couple of insignificant corrections. The factors present in *Cruz-Rijos* which mandated a different result are not present in the instant case.

In *Cruz-Rijos* the Court of Military Appeals made clear its desire as to the utilization of paragraph 82f and it may be expected that these standards will be followed in future cases. I do not, however, believe that these standards should be applied retroactively to cases where there is no indication that the parties acted in bad faith, where the circumstances of *Cruz-Rijos* are not present, and the possibility of harm to the appellant is nil. *See United States v. Wilson*, 2 M.J. 259 (A.F.C.M.R. 9 August 1976); *but see United States v. Stewart*, 2 M.J. 1068 (A.C.M.R. 14 December 1976).