**UNITED STATES, Appellee,**

v.

**Private First Class Jess C. ANDRADE, Jr., SSN 567–06–3666, United States Army, Appellant.**

**SPCM 12389.**

U. S. Army Court of Military Review.

20 May 1977.

5. *McCarthy,* 2 M.J. at 29.

6. *McCarthy, id.*

Lieutenant Colonel John R. Thornock, JAGC, and Captain D. David Hostler, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel John T. Sherwood, Jr., JAGC, Captain Richard A. Kirby, JAGC, and Captain Denis L. Durkin, JAGC, were on the pleadings for appellee.

Before JONES, Senior Judge, and FULTON and FELDER, JJ.

## OPINION OF THE COURT

FULTON, Judge:

The appellant pleaded guilty to assault with a dangerous weapon and was sentenced by court members to be discharged with a bad-conduct discharge. The sole issue on appeal is whether it was proper for the trial counsel, rather than the military judge, to authenticate the record of trial.

The trial was concluded at Fort Lewis, Washington, on 16 June 1976. On 1 July 1976 the trial judge left Fort Lewis, which is within the Army's fourth judicial circuit, because he had been assigned to a new duty station at Fort Gordon, Georgia, which is within the second judicial circuit. He officially arrived at Fort Gordon on 28 July 1976. On the same day, the trial counsel at Fort Lewis authenticated the record of trial "in absence of the military judge."

The Uniform Code of Military Justice permits the trial counsel to authenticate a record of trial by general court-martial only if it "cannot be authenticated by the military judge by reason of his death, disability or absence." Article 54(a), Uniform Code of Military Justice, 10 U.S.C. § 854(a). Through the Manual for Courts-Martial, United States, 1969 (Revised Edition), the President has made the same rule apply to records of trial by special courts-martial when a bad-conduct discharge is involved. MCM, 1969 (Rev.Ed.), paragraphs 82f, 83a; see Article 54(b), UCMJ, supra.

The Court of Military Appeals has held that a trial counsel "impermissibly invoked" the " 'absence' provision" in authenticating a record of trial himself when it happened that the military judge was again present at the place of the trial within a reasonable time after the transcript was prepared and

obtaining the judge's authentication would not necessarily have caused the accused to be confined for more than 90 days after trial awaiting the convening authority's action. *United States v. Cruz-Rijos*, 24 U.S.C. M.A. 271, 272–73, 51 C.M.R. 723, 724–25, 1 M.J. 429, 430–32 (1976). The Court observed that the goal of speedy appellate disposition, concededly important, must be weighed against the protection of the integrity of the judicial process that comes from having the record authenticated by the neutral judge. 1 M.J. at 431. The Court further indicated that authentication of the record by someone other than the judge should occur only when his absence gives rise to an emergency situation as contextually connoted by the terms "death, disability, or absence." *Id.*

Several of the subsequent cases reaching this Court have involved situations—unlike that in *Cruz-Rijos*—in which the military judge could not be expected to return to the situs of the trial. *See, e. g., United States v. Griffin*, 3 M.J. 553 (A.C.M.R. 25 February 1977) (judge transferred within the United States to a different circuit); *United States v. Guerra-Berrios*, 54 C.M.R. 625, 2 M.J. 1070 (A.C.M.R.1976) (judge transferred to a non-judiciary assignment overseas); *United States v. Evans*, 54 C.M.R. 372, 2 M.J. 1043 (A.C.M.R.1976) (judge released from active military service). In *Guerra-Berrios*, the panel assumed that *Cruz-Rijos* applied, and used the balancing test to find that authentication by the trial counsel was proper when sending the record to the military judge would have caused more than 100 days to elapse between the date of trial and the convening authority's action and would have exposed the record to the hazards of a prolonged journey (Fort Bragg, N.C., to Korea) by mail. 54 C.M.R. at 627, 2 M.J. at 1071. Earlier, in *Evans*, the same panel had found that a trial judge's relocation to a city 500 miles from the trial situs did not militate against his authentication of the record, but held that his removal from active military service was an absence of an emergency nature. 54 C.M.R. at 373–74, 2 M.J. at 1044; *accord, United States v. Sudler*, 54 C.M.R. 395, 400–01, 2 M.J. 558,

561–62 (A.C.M.R.1976). The *Griffin* case, decided by a different panel, is in all substantial respects identical to the one before us. It involves the same trial situs, military judge, and circumstances of authentication. *Griffin* holds that, when the military judge is permanently absent from his assigned circuit by reason of military orders, that "is an 'absence' within the meaning of Article 54." *Id.*, 3 M.J. at 555.

The rule sought to be established in *Griffin* has an attractive certitude that can be employed in a variety of factual situations. The decision, however, focuses only on the definition of "absence" and ignores the balancing test that *Cruz-Rijos* requires. The Army's arrangement of judicial circuits is not a jurisdictional matter; a judge assigned to one circuit may preside in cases located within another. Indeed, he sometimes can be closer to the trial situs than if stationed at another installation within the same circuit as the trial situs.

Returning to the facts of this case, there was no post-trial confinement so as to risk incurring the presumption established by *Dunlap v. Convening Authority*, 23 U.S. C.M.A. 135, 48 C.M.R. 751 (1974). Parenthetically, that may explain why the convening authority's action was not taken until the 99th day following the trial. The transcript was ready to be authenticated at least as early as the 42d day following the trial. The military judge was available at his new installation. The record was not unusually long (88 pages). Its transmission through the postal system would not have exposed it to any more than the usual risks of domestic mail service, which appears to be frequently used to transmit records of trial to and from military judges, as well as to this Court for appellate review. In short, there were no factors related to the speedy appellate disposition of this case that outweighed the need for actual and perceived neutrality in the authentication of the record. Accordingly, it was error for the trial counsel to authenticate the record.

If we are to weigh the preservation of the integrity of the judicial process against

the speedy appellate disposition of cases in determining whether a trial counsel properly authenticated the record in the first place, then it seems that we should do the same in determining the course to pursue when his authentication was improper.[1] The *Cruz-Rijos* court required a reauthentication and a new review and action. This, however, may have been due to the unusual facts, which included more than 800 corrections to the record not seen by trial defense counsel or the accused until after the convening authority had acted. While the same facts do not confront us here, the same issue does: what is the risk that we are reviewing an inaccurate record?

■ We find no fair risk that the record is inaccurate. Its accuracy has not been challenged either in proceedings before the convening authority or in this Court. The trial counsel's actions seem to have been in good faith and in accordance with previously existing practice.[2] The eleven changes made in the record by the trial counsel are noncontroversial. The trial defense counsel examined the amended record before or in connection with his examination of the staff judge advocate's review.[3]

As eleven months have elapsed since the appellant's trial, there can be some question whether "speedy appellate disposition" of his case is any longer possible. Yet, returning this record to field authorities for authentication by the military judge, a new review by the staff judge advocate, further opportunity for rebuttal by a defense counsel, and a new action by the convening authority, and return to and further proceedings by this Court, clearly will render the final disposition less "speedy."[4] As there is no fair risk of inaccuracy or injustice, avoiding further delay will not reflect adversely on the integrity of the judicial process.

The findings of guilty and the sentence are affirmed.

Judge FELDER concurs.

JONES, Senior Judge, concurring:

I concur. However, I would approach the question in a somewhat different order.

I believe the first question to be decided when the record of trial is authenticated by other than the military judge is whether or not the judge was absent, as that term is used in Article 54(a), Uniform Code of Military Justice, and paragraph 92f, Manual for Courts-Martial, United States, 1969 (Revised edition). I would define absence as being physically away from the installation with no reasonable expectation of return thereto in a judicial capacity in the foreseeable future.

I do not believe a potential violation of the *Dunlap* speedy disposition standard is an appropriate consideration in the determination of absence. However, after that determination is made, the balancing test discussed by the majority should be employed. In that test, the speedy disposition question is, of course, one of the prime considerations. I believe a military judge could be found to be absent, yet in balancing the equities of speedy disposition versus the

1. Other panels of this Court are divided on the question whether a record improperly authenticated by trial counsel must always be returned for authentication by the judge. *Compare United States v. Sperling*, 3 M.J. 543 (A.C.M.R. 1977), *with United States v. Stewart*, 2 M.J. 1068 (A.C.M.R.1976).

2. His authentication was made a few days before publication of the official advance sheet reporting the *Cruz-Rijos* decision, albeit several weeks after promulgation of new instructions to trial judges referred to in that decision. *See* 24 U.S.C.M.A. at 272, 51 C.M.R. at 724, 1 M.J. at 430 n. 1 (quoting from Trial Judge Memorandum Number 98, dated 1 June 1976).

3. The command is not to be congratulated for its promptness. After taking 42 days to prepare and authenticate the relatively short record of an uncontested case, another 49 days elapsed before the defense counsel examined the record. The appellant did not receive a copy for another month, which was three weeks after the convening authority acted.

4. If a new authentication were necessary, we would follow the procedure discussed in *United States v. Stewart*, 54 C.M.R. 629, 632, 2 M.J. 1068, 1069 n. 7 (A.C.M.R.1976).

desirability of authentication by the impartial military judge rather than by a partisan advocate, the conclusion could be reached that the need for an impartial authentication was so dominant that authentication by trial counsel would not be permitted.

I also agree with the majority that the absence determination and the balancing test may well have to be employed twice; first, as to the situation existing at the time of the initial authentication, review and action, and second, as to the situation existing when the appellate court determines the original authentication by trial counsel was impermissible.

Finally, I concur with the majority in holding that as a last step we must test for prejudice to the accused whenever the trial counsel authenticates in either of the two impermissible situations, viz. (1) where the military judge is not in fact absent; * or (2) where the military judge is absent but a balancing of the equities requires that he nevertheless authenticate the record. If we find no prejudice to the substantial rights of the accused, the error would be harmless. Article 54(a), UCMJ.

---

* I place the *Cruz-Rijos* decision in this category as the Court of Military Appeals found the military judge to have actually been present and available to authenticate the record.