# LOUISVILLE, EVANSVILLE, AND ST. LOUIS RAILROAD COMPANY v. CLARKE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 191. Argued January 4, 1894. — Decided March 4, 1894.

The right which section 284 of the Revised Statutes of Indiana gives to the personal representative of a deceased person, whose death has been caused by the wrongful act or omission of another, to maintain an action against the latter within two years after the death, accrues when the death so caused occurs, whether it happens before or after the expiration of a period of a year and a day from the date of its cause.

The common law rule in prosecutions for murder, appeals of death, and inquisitions against deodands, does not apply to the right of action given by that statute.

In an action by the personal representative of a deceased person whose death has been caused by the wrongful act or omission of the defendant, evidence as to the income of the deceased previous to his death is admissible.

When, in an action founded upon a state statute, a Federal judge in instructing the jury adopts the construction given to the statute by the highest court of the State, it is no error to add that he had formerly been of a different opinion, and so instructed former juries.

THIS was an action brought by the executor of a deceased person under Rev. Stats. Indiana, § 284, against the plaintiff in error, defendant below, to recover damages for the death of the plaintiff's testator alleged to have been caused by the wrongful act of the defendant. The accident by which the plaintiff was injured was alleged to have taken place November 25, 1886, and the death to have happened by reason of his injuries February 23, 1888. The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, contending that, as the death did not occur until after the expiration of a year and a day from the infliction of the injury, it could not be held in law to have been caused by the act of the defendant. The demurrer was overruled, the defendant answered, issue was joined, and the trial resulted in a verdict and judgment for the plaintiff, to which this writ of error was sued out. The

overruling of the demurrer was one of the assignments of error. There were also other assignments which are noticed in the opinion of the court.

*Mr. Alexander Pope Humphrey* for plaintiff in error. *Mr. John E. Iglehart* and *Mr. Edwin Taylor* were with him on the brief.

At common law there were three occasions upon which the courts inquired in respect of the killing of a human being: *First:* Indictments which were public prosecutions; prosecutions brought in the name and behalf of the king. *Second:* Appeals of death, which were proceedings brought not by the king nor in his name, but in the name and for the benefit of private individuals. *Third:* Inquisitions against deodands.

As to the first, where there was a public prosecution, that is, a prosecution brought in the name of the king, against one accused of a wrongful act, causing the death of another, it was necessary to show that the stroke or poison given by the accused had been given within a year and a day from the time of the death of the person alleged to have been slain.

As to the second, these appeals of death were merely the survival of the Saxon weregild, 4 Bl. Com. 313. Though criminal in form, they were civil in purpose, being between private individuals and under the control of private individuals. They could not be brought more than a year and a day after the death. 3 Henry 7, c. 1. See also 6 Ed. 1, c. 9. And in Hawkins' Pleas of the Crown, Bk. 2, c. 23, § 88, it is said that "it seems clear that the appeal of death must not only set forth the day when the hurt was given, but also the day when the party died of it." Thus we see that, in this action at the common law, civil in its nature, and closely resembling the action allowed by the Indiana Statute, not only must it be commenced within a year and a day after the receipt of the injury, but also that the pleadings must set forth the dates.

The third instance at which, at common law, an inquisition could be set on foot, by reason of the death of an individual was in case of a deodand. At common law if the death of a

person was caused by an inanimate object the inanimate object was a deodand, and was seized for the benefit of the Crown and sold for pious uses. Now, what was the rule in reference to the deodand?

In 1 Hawkins' Pleas of the Crown, Bk. 1, c. 26, § 7, it is said in regard to the presumption and rule of law as to inanimate objects causing the death of a human being: " In all these cases, if the party wounded die not of the wound within a year and a day after he received it, there shall be nothing forfeited; for the law does not look upon such a wound as the cause of a man's death, after which he lives so long; but if the party die within that time, the forfeiture shall have relation to the wound given, and cannot be saved by any alienation or other act whatsoever, in the meantime." This rule was enforced in *Regina* v. *Brownlow*, 11 Ad. & El. 119.

It will thus be seen that every application of this rule of a year and a day, was made at common law, which was possible.

This rule of the law is still applicable to every case known at common law, where a civil remedy, or a quasi-civil remedy is given against a person who has killed another.

The statute of Indiana, Sec. 284, Revision of 1881, upon which this action is brought, furnishes a civil remedy for a like criminal offence. It follows inevitably that the law must apply the same rule to the civil action as to the criminal prosecution, or be guilty of the grossest absurdity. That statute is said to have been " intended to accomplish the same end as the statutes 9 and 10 Vict. c. 93, commonly known as Lord Campbell's Act." *Mayhew* v. *Burns*, 103 Indiana, 328.

There was, in England, at the time of the passing of Lord Campbell's Act, no civil remedy by the relations of a person killed by another against the slayer. That act had for its end and object, therefore, the revival of the ancient law relating to appeals of death in a modified form, and to insert into the common law a principle, the reverse of which had been declared to be the common law of England. It gave a new cause of action, namely, for causing the death. It continued the right of action which the deceased had in favor of his relatives only in the sense that it gave them a right of

action for any injury arising from the wrongful act, default or neglect. It did not give them a right of action for the injury which the deceased sustained, and for which he might have recovered damages, had he lived, but for the injury which they suffered by the death of the deceased. And this loss must be a pecuniary loss to the person claiming as beneficiary. *Franklin* v. *Southeastern Railway*, 3. H. & N. 211; *Pym* v. *Great Northern Railway*, 4 Best & Smith, 396.

The interpretation placed upon the act by the English Courts is that the right of action for the benefit of the relatives is conditional — that, if the deceased might have sued for the injury to him, they, after his death, may sue for the injury to them. Hence, if he has compromised and settled his right of action, their right of action falls thereby. *Read* v. *Great Eastern Railway*, L. R. 3 Q. B. 555.

It is plain from the wording and structure of Lord Campbell's Act, that it was the intention to revive in a modified form the old law of weregilds and appeals of death. It gave the pecuniary remedy to the same relations who would have been entitled to sue in the case of appeals of death, and the same time of limitation was fixed as the time within which the action must be brought. It cannot be that such similarity was unintentional. The reason for the abolition of appeals of death was, that they interfered with, and oftentimes delayed, the criminal prosecution, and amounted to a gratification of private resentment, rather than a punishment for the injury committed against the State. The principle of them, however, that there ought to be a remedy to the individual for the injury done him by the killing of a relative on whom he or she was dependent, was recognized as being a just and correct one. In passing the Statute of 9 and 10 Vict., c. 93, the legislature preserved nearly all the features of the old law relating to weregilds and appeals of death, except that the civil remedy was made independent of and in addition to the criminal prosecution, instead of being a substitute therefor.

The year and a day rule is a reasonable one, founded upon principles of justice to the individual, and necessary to the orderly administration of trials. If it be not declared as the

rule applicable to this class of actions, the duties of courts and juries will be likely to be increased to an extent far beyond what has hitherto been required of them, by actions upon this statute for injuries received years ago. The fact that there is no case to be found where this question has been raised, argues that the year and a day rule has been taken as settled law, for the facts certainly have existed many times before this, and the question would certainly have been litigated, if there had been any hope of success.

There is nothing in the statutory limitation of two years to prevent the construction which we claim as being placed upon this statute. Two years from the death of the injured party is allowed within which the action must be brought. *Hanna v. Jeffersonville Railroad,* 32 Indiana, 113.

Such a limitation is necessary in order that there may be an end of litigation. The year and a day rule stands upon an entirely different ground, as above shown, absolutely placing a limit to the inquiry into causes of causes. This limit operates from the time of the wrongful act or omission. The two years statute of limitation operates from the accruing of the cause of action, that is, from the death. The two limitations are, therefore, absolutely disconnected, and stand upon different and independent grounds.

For the above reasons we claim that the complaint, by the reason of its showing the death to have occurred more than a year and a day after the act, shows, in contemplation of law, that the wrongful act or omission did not cause the death, and that it is, therefore, insufficient, by reason of the failure to allege the most important fact.

*Mr. W. H. H. Miller,* (with whom were *Mr. Ferd. Winter* and *Mr. John B. Elam* on the brief,) for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action was brought April 28, 1888, by the executor of Augustine Clarke, whose death, the plaintiff alleged, was caused by the wrongful act and omission of the defendant, the Louisville, Evansville and St. Louis Railroad Company,

a carrier of passengers for hire.  The gist of the action is the negligence of the company, its agents and servants, in consequence of which the decedent, on the 25th day of November, 1886, while travelling on the defendant's cars, in the State of Indiana, received injuries in his person from which death ensued.  The plaintiff's testator died February 23d, 1888.

The action was founded on section 284 of the Revised Statutes of Indiana, (Revision of 1881,) providing:

" When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission.  The action must be commenced within two years.  The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

It appeared from the complaint that plaintiff's testator lived more than a year and a day after being injured.  And the question was presented, upon a demurrer interposed by the defendant, whether, within the meaning of the statute, it could properly be said that death was *caused* by the wrongful act or omission of another if it did not occur until after the expiration of a year and a day from such act or omission. The argument in support of this limitation upon the right of action given by the statute is based upon certain rules at common law in prosecutions for murder, appeals of death, and inquisitions against deodands.  Before examining this question it will be well to ascertain the object of the statute as declared by the Supreme Court of Indiana.

In *Lofton* v. *Vogles' Administrator*, 17 Indiana, 105, 107, which was an action under this statute, it was contended that the plaintiff could not maintain his suit without showing that he had criminally prosecuted the defendant to conviction; that such prosecution was a condition precedent to a civil action.  It was held that this rule did not prevail in the United

States, as we do not in this country depend upon the injured party, or his representative, to institute criminal prosecutions.

In *Jeffersonville Railroad* v. *Swayne's Administrator*, 26 Indiana, 459, 484, the court, observing that it was a maxim of the common law, too familiar and long established to require the citation of authority to support it, that a cause of action for an injury to the person dies with the party injured, and does not survive to his personal representative, said: "The statute does not profess to revive the cause of action for the injury to the deceased in favor of his personal representative, nor is such its legal effect, but it creates a new cause of action unknown to the common law. The action given by the statute is for causing the death, by a wrongful act or omission, in a case where the deceased might have maintained an action had he lived, for an injury by the same act or omission. The right of compensation for the bodily injury of the deceased, which dies with him, remains extinct. The right of action created by the statute is founded on a new grievance, namely, causing the death, and is for the injury sustained thereby, by the widow and children, or next of kin of the deceased, for the damages must inure to their exclusive benefit."

"The provision that the personal representative may maintain an action, if the deceased could have maintained one, if the injury had caused death," the court said in *Pittsburgh, Fort Wayne &c. Railway* v. *Vining's Administrator*, 27 Indiana, 513, 518, "has been heretofore ruled to be applicable to the cause of action, and not to the person bringing it. In other words, an action may be maintained when the deceased, had he lived, would not have been prevented from recovering by reason of his own want of care."

In *Mayhew* v. *Burns*, 103 Indiana, 328, 333, the court said that the statute "gives to the widow or next of kin, through the personal representative, a right to recover for any injury which they may have sustained by reason of the death of an adult, or one emancipated from parental service, and in whose life they may have had a pecuniary interest."

In *Hanna* v. *Jeffersonville Railroad Co.*, 32 Indiana, 113,

114, the court, discussing the question whether the two years' limitation prescribed by the statute ran from the death of the person injured, or from the qualification of his administrator, said: "The statute was intended mainly to be operative against carriers of passengers and in a very large measure against corporations, whose business is exclusively performed by hired servants, who are being constantly changed, and in whose knowledge the facts of such cases would generally rest, or who must be depended on for such information as would lead to a discovery of the facts and witnesses to establish them. The reasons for requiring the suit to be brought within some short period after the occurrence were, therefore, very forcible and must have been perceived. While a proper regard for the security of human life required that a right of action should be given which did not exist by previous law, the considerations already noted required that the remedy should be promptly sought; else a door would be open wide for injustice and wrong." It was, therefore, held that the time limited for suit began to run from the death.

In *Burns* v. *Grand Rapids & Indiana Railroad*, 113 Indiana, 169, 171, the court, construing the statute, said that "the recovery is not a penalty inflicted by way of punishment for the wrong, but is merely compensatory of the damages sustained by the heirs or next of kin, who had, or are supposed to have had, a pecuniary interest in the life of the intestate."

And in *Hecht* v. *Ohio & Miss. Railway*, 132 Indiana, 507, 514: "The wording of Lord Campbell's Act and the statute of this State differ somewhat, but are in effect the same. The purpose of each was to give to the personal representative of the deceased a right of action if the deceased at the instant of his death would have had a right of action for the same act or omission had he survived." It was, consequently, held that a personal representative could not maintain an action under the statute, if the party injured, in his lifetime, sued and recovered full compensation for the injuries inflicted, and had thereby, if he had lived, precluded himself from maintaining any further action on account of such injuries. The same construction was placed upon Lord Campbell's Act in *Read* v.

*Great Eastern Railway,* L. R. 3 Q. B. 555; and in *Littlewood* v. *New York City,* 89 N. Y. 24, upon a statute of New York, not differing materially from the Indiana statute.

It thus appears to be the settled construction of this statute that the right of a personal representative to bring an action for the exclusive benefit of the widow and children, or next of kin, of one whose death was caused by the wrongful act or omission of another, depends upon the 'existence or non-existence of a right in the decedent, immediately before his death, to have maintained an action on account of such act or omission. Consequently, the words of the Indiana statute, " the action must be commenced within two years," means two years from the death of the person injured, not from the time he received the injuries from which death resulted.

In the light of this construction it would seem to be an unreasonable interpretation of the statute to hold that the personal representative has no right of action, in any case, where a year and a day passes after the injury before death occurs. The statute, in express words, gives the personal representative two years within which to sue. He cannot sue until the cause of action accrues, and the cause of action given by the statute for the exclusive benefit of the widow and children or next of kin cannot accrue until the person injured dies. Until the death of the person injured, the " new grievance " upon which the action is founded does not exist. To say, therefore, that where the person injured dies one year and *two* days after being injured, no action can be maintained by the personal representative, is to go in the face of the statute, which makes no distinction between cases where death occurs within less than a year and a day from the injury, and where it does not occur until after the expiration of one year and a day. Although the evidence may show, beyond all dispute, that the death was caused by the wrongful act or omission of the defendant, and although the action by the personal representative was brought within two years after the death, yet, according to the argument of learned counsel, the action cannot be maintained if the deceased happened to survive his injuries for a year and a day. We can-

not assent to this view. Was the death, in fact, caused by the wrongful act or omission of the defendant? That is the vital inquiry in each case. The statute imposes no other condition upon the right to sue. The court has no authority to impose an additional or different one. If death was so caused, then the personal representative may sue at any time within two years from such death.

Ought we to allow this obvious construction of the statute to be defeated by any rule recognized at common law as controlling upon an inquiry as to the cause of death in cases of murder, appeals of death, or inquisitions against deodands?

In cases of murder the rule at common law undoubtedly was that no person should be adjudged " by any act whatever to kill another who does not die by it within a year and a day thereafter; in computation whereof the whole day on which the hurt was done shall be reckoned first." Hawkins' Pleas of the Crown, Bk. 1, c. 13; Id. Bk. 2, c. 23, § 88; 4 Bl. Com. 197, 306. The reason assigned for that rule was that if the person alleged to have been murdered " die after that time, it cannot be discerned, as the law presumes, whether he died of the stroke or poison, etc., or a natural death; and in case of life, a rule of law ought to be certain." 3 Inst. 53. And such is the rule in this country in prosecutions for murder, except in jurisdictions where it may be otherwise prescribed by statute. Wharton's Amer. Cr. L. § 1073; *State* v. *Sorrell*, 1 Devereux Law (N. C.) 139.

An appeal, when spoken of as a criminal prosecution, denoted, according to Blackstone, an accusation by a private subject against another, for some heinous crime — a " private process for the punishment of public crimes," having its origin in a custom, derived from the ancient Germans, of allowing a pecuniary satisfaction, called a *weregild*, to the party injured or his relations, " to expiate enormous offences." 4 Bl. Com. 312, 313. Bacon defines it to be a " vindictive " action, — " the party's private action, seeking revenge for the injury done him, and at the same time prosecuting for the Crown in respect of the offence against the public." Bacon Abridg. Title, Appeal. These appeals could be brought " previous to

an indictment, and if the appellee be acquitted thereon, he could not be afterwards indicted for the same offence." 4 Bl. Com. 315; Comyn's Dig. Title, Appeal, G. 11, 16. While, during the continuance of the custom referred to, a process was given for recovering the *weregild* by the party to whom it was due, "it seems that when these offences by degrees grew no longer redeemable, the private process was still continued, in order to insure the infliction of punishment on the offender, though the party was allowed no pecuniary compensation for the offence." Bk. 4, 314. By statute of 59 Geo. 3, c. 46, appeals of murder, treason, felony, and other offences were abolished.

During the time when appeals of death were allowed, at common law, the rule established by the statute of Gloucester, 6 Edw. 1, c. 9, was that "the appeal must be sued out within a year and a day after the completion of the felony by the death of the party." 4 Bl. Com. 315, 329 n. This, the author said, seemed to be only declaratory of the common law. And Hawkins says: "It seems clear that the appeal of death must set forth the day when the hurt was given, but also the day when the party died of it; as it appears from all precedents of this kind, both in Coke and Raslat, and also from the manifest reason of the thing, that it may appear that the party died within a year and a day after the stroke, in which case only the law intends the death was occasioned by it." Bk. 2, c. 23, § 88. Bacon, referring to the statute of Gloucester, says that, by that statute, "an appeal shall not be abated for default of fresh suit, if the party sue within the year and day after the deed done, the computation whereof, as the law is now settled, shall be made not from the day when the wound is given, but *from the day when the party died;* also, the year and day shall be computed from the beginning of the day, and not from the precise time when the death happened, because regularly no fraction shall be made of a day." Title, Appeal, D. And Comyn: "By the statute of Gloucester, 6 Edw. 1 c. 9, an appeal shall not abate by want of fresh suit, if brought in a year and a day after the fact done; which statute is, by construction, restrained to an

appeal for the death of a man. And, therefore, an appeal upon the death of a man may be within the year and day, though there be not any fresh suit; within a year and day *after the death*, though the blow was given before." 2 Inst. 320, Title, Appeal, D.

The rule of a year and a day was also applied at common law to inquisitions of deodands, brought to forfeit to the king, " to be applied to pious uses and distributed in alms by his high almoner," personal chattels that were the immediate occasion of the death of any reasonable creature. 1 Bl. Com. 300. The rule in those cases was that the law does not look upon such a wound as the cause of a man's death, " after which he lives so long." Hawkins' P. C. Bk. 1, c. 8, § 7.

We have made this full reference to prosecutions for murder, appeals of death, and inquisitions against deodands, because of the earnest contention of counsel that the rule, applied at common law in such cases, should control the construction of the Indiana statute. In our judgment, the rule of a year and a day is inapplicable to the case before us. In prosecutions for murder the rule was one simply of criminal evidence. Appeals of death and inquisitions against deodands, although having some of the features of civil proceedings, were, in material respects, criminal in their nature. Besides, as we have seen, the statute of 6 Edw. 1, c. 9, was construed as giving a year and a day from the death of the party killed, not from the time the wound was inflicted. And we do not understand that any different construction was placed upon the statute of 3 Hen. 8, c. 1, to which counsel referred.

But be that as it may, in prosecutions for murder and appeals of death, the principal object was the punishment of public offences. In cases of murder and appeals of death, human life was involved, while in inquisitions against deodands it was sought to forfeit property that had caused the death of some one. In such cases, the rule of a year and a day might well have been applied. But actions under a statute like the one in Indiana are, in their nature and consequences, wholly of a civil character. What the legislature

had in view was to make provision for the widow and children, or next of kin, of one whose death had been caused by the wrongful act or omission of another. The reasons upon which the rule of a year and a day were applied in the above-mentioned cases at common law do not apply with the same force in purely civil proceedings that involve no element of punishment, but only provide compensation to certain relatives of the decedent who have been deprived of his assistance and aid. As the statute, according to the construction placed upon it by the highest court of Indiana, allows the personal representative to sue within two years after the death of the testator or intestate, where death was caused by the wrongful act or omission of the defendant, we cannot, by mere construction, restrict that right to cases in which the death occurred within a year and a day after such act or omission. We repeat that, where death was *caused* by the wrongful act or omission of another, the right of the personal representative, suing for the benefit of the widow and children or next of kin, to recover damages on account of such death, is complete under the statute, and may be asserted by action brought at any time within two years from the death.

It is assigned for error that the court below permitted the plaintiff, against the objection of the defendant, to testify as to the income of the deceased previous to his death. It is conceded by counsel that it was competent to have shown the testator's ability and capacity for labor as well as his skill in his calling. But it is insisted that the evidence as to his income for a particular period was not competent. We are of the opinion that the evidence to which the defendant objected was properly admitted. It tended, in connection with other evidence, to show the extent of the loss sustained by the widow and children on account of the death of the husband and father. The age of the deceased, his probable expectancy of life, his occupation, his ability to labor, his accustomed earnings, were all proper elements of the inquiry as to the compensation proper to be awarded on account of his death. *Wade* v. *Le Roy,* 20 How. 34; *Nebraska City* v. *Campbell,* 2 Black, 590; *District of Columbia* v. *Woodbury,* 136 U. S. 450;

*Texas & Pacific Railway* v. *Volk,* 151 U. S. 73; *Howard County* v. *Legg,* 110 Indiana, 479; *Hudson* v. *Houser, Administrator,* 123 Indiana, 309; *Collins* v. *Davidson,* 19 Fed. Rep. 83; *Hall* v. *Galveston,* 39 Fed. Rep. 18; *Serenson* v. *Northern Pacific Railroad,* 45 Fed. Rep. 407.

Certain observations made by Judge Woods, at the close of his charge to the jury, are also assigned for error. They were as follows: " Some years ago, in a case in this court involving this question, I instructed that the jury was not restricted in its award of damage to the proof of pecuniary loss suffered by the widow or next of kin, for whose benefit the action was prosecuted, and, if left to myself, should so rule now. The statute provides that the damages awarded shall ' be distributed in the same manner as personal property of the deceased,' and this, it seems to me, is inconsistent with the proposition that the damages to be allowed cannot exceed the proven pecuniary loss. Some of the next of kin might be dependent and shown to have a pecuniary interest in the life of the deceased, and others to have no such interest, and yet the damages allowed must go to those who had no such interest as well, and as much as to those on account of whose interest it was allowable; but the Supreme Court of the State, in a somewhat recent case, as I understand, has put an interpretation upon this statute which is binding upon this and other courts, and in accordance with that decision, as I remember it, I instruct you, and for the purpose of this case you will accept it as the law, that you will allow only the pecuniary loss suffered by the widow and surviving children on account of this death, not exceeding the limit of ten thousand dollars fixed by the statute."

The defendant, of course, makes no objection to the principle of law announced by the court, for the charge was in exact conformity to its request for instructions upon the question of damages. But it insists that the jury were probably influenced, to its prejudice, by the statement that the court below had expressed a different view from that announced by the state court.

We are of opinion that the action of the court below, in respect to this matter, is not ground of error. What the judge

said was in deference to the decision of the state court, whose interpretation of the local statute was accepted as the law of the case. The jury were distinctly informed that they were to follow the rule of damages announced by the state court, notwithstanding the court below had, on a former occasion, acted on a different interpretation of the statute. It is not to be supposed that the jury misapprehended or disregarded the explicit injunction of the court to allow, in the event of a verdict for the plaintiff, only the pecuniary loss suffered by the widow and surviving children on account of the death of the husband and father.

We perceive no error in the record, and the judgment is

*Affirmed.*