PRESTON v. WESTERN UNION TELEGRAPH CO.

(District Court, E. D. Pennsylvania. May 7, 1918.)

No. 4154.

1. EVIDENCE ⟨⟩77(6)—PRESUMPTIONS.
In an action for wrongful death, where plaintiff offered testimony of medical experts that the death resulted from injuries some time previous, the failure of defendant to offer evidence controverting such expert testimony warrants inference that none was to be had.

2. EVIDENCE ⟨⟩571(9)—DEATH—EXPERT EVIDENCE.
In an action for wrongful death, where plaintiff's medical experts testified that death resulted from the injury and such testimony was not controverted by other expert evidence, a finding of the jury that death resulted from the injury will be accepted, regardless of great lapse of time between the injury and the death.

3. RELEASE ⟨⟩58(3)—APPEAL AND ERROR ⟨⟩1006(2)—JURY QUESTION—SUCCESSIVE VERDICTS.
Where the genuineness of deceased's signature to a release was questioned, and the evidence was conflicting, the matter should be submitted to the jury; and, where there have been two successive verdicts against the release, the judgment will not be disturbed.

4. DEATH ⟨⟩37—ACTION—HOMICIDE RULE.
The familiar rule as to a year and a day, applicable to homicide cases, cannot be applied in determining whether a right of action under a death statute was barred by the great lapse of time between the injury and death.

5. DEATH ⟨⟩39—LIMITATIONS.
Under the Pennsylvania statute, giving a widow a right of action for the death of her husband, to be asserted within a year after death, such action is not barred by the fact that the decedent's right of action for the injury was barred by limitations at the time of his death.

6. LIMITATION OF ACTIONS ⟨⟩180(1)—PLEADING—NECESSITY OF PLEADING STATUTE.
It is the rule in Pennsylvania that the statute of limitations is a defense to be pleaded, and as a consequence it does not afford ground for demurrer.

At Law. Action by Mary E. Preston against the Western Union Telegraph Company. Sur motion and reasons of defendant for new trial. Rule for new trial discharged, and plaintiff granted leave to enter judgment on the verdict.

See also (D. C.) 246 Fed. 543.

Hugh Roberts, of Philadelphia, Pa., for plaintiff.

Wm. B. Linn and James Frank Shrader, both of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The past record of this case has erased certain impressions of its fact merits which a first glance at the case gives us. One of them is the great lapse of time between the injury and the death. This is so great that the mind at first staggers over the finding that the one was the cause of the other. An intelligent jury, to which the question was submitted, found that it was. A new trial was granted by the trial judge, largely for the reason that

there was an absence of as clear proof of this fact as the plaintiff was thought to be called upon to supply.

[1, 2] At the second trial the duty of furnishing this clear proof was fully met by the plaintiff. In addition to this, we have now the very significant fact of the absolute silence of the defendant when called upon to make answer. A number of surgeons have testified to their positive opinions that the injury sustained by the plaintiff's decedent, while in the employ of the defendant, was the cause of his subsequent death, and no witness was called by the defendant to question this expert testimony. The inference is justified that it was not questioned, because the defendant was unable to find a responsible professional man who would express an opinion to the contrary. The jury found the fact following this clear weight of the evidence. In view of this history of the case, we must accept the finding. Railroad v. Clarke, 152 U. S. 235, 14 Sup. Ct. 579, 38 L. Ed. 422; Brashear v. Traction Co., 180 Pa. 392, 36 Atl. 914; McCafferty v. Railroad, 193 Pa. 339, 44 Atl. 435, 74 Am. St. Rep. 690; Guckavan v. Traction Co., 203 Pa. 521, 53 Atl. 351.

[3] A like observation is called for with respect to another branch of the case. The defendant put in evidence a release purporting to have been executed by the deceased. The plaintiff denied the genuineness of the signature to this release. At the first trial the evidence was very meager. The jury, however, found the fact in favor of the plaintiff, and this finding also largely figured in influencing the trial judge in granting a new trial. During the trial just closed the defendant sought to strengthen its proofs of the execution of the paper. The result has been a finding against it. The stenographer's notes, when the testimony is put into cold type, will doubtless give the impression of great preponderating weight to the evidence supporting the integrity of this release.

There are, however, two accompanying facts which prevent the court from interfering with the finding of the two juries. One is that a witness called by the defendant to testify to his presence at the execution, and who did so testify, by his demeanor upon the stand laid himself open to fair criticism of manifest partisanship, which weakened very much the strength of his testimony and lessened its value. The other is that the jury had the benefit of the comparison of the disputed signature with a genuine one, and thus the opportunity to constitute themselves handwriting experts, and the fact is known that there were individual members of the jury who by experience were qualified to serve as such experts.

The defense was in very capable hands, and the experienced counsel for defendant seemingly now recognizes that there is no other question of fact which can be raised on this motion as a quasi appellate question than the one of the execution of this release. In view of the findings of successive juries and of the considerations above referred to, we cannot find this question to be now an open one. The duty of the court to sustain the integrity of written papers, and not to permit their value to be destroyed, or to permit the papers themselves to become the sport of whim or caprice, is clear enough. We cannot, however, ignore

the significance of findings thus solemnly made by tribunals to which their decision is properly committed. This does not mean merely a denial of the right to interfere, but it means that it has the persuasive effect of changing what seemed to have been a well fixed opinion. The genuineness of the signature being in dispute, the duty of the trial judge to submit the question to the jury is settled by the case of Hogarth v. Grundy, 256 Pa. 451, 100 Atl. 1001. We accept the finding of the jury, not only because it was their province to make it, but because the result of this trial has been to shake, if not to change, the conviction of the trial judge of the fact merits of this branch of the case.

[4, 5] This leaves in the case only a question of law. It may be characterized as a question of the application of the statute of limitations, or, and we think more properly, it may be one viewed as the question of the existence of a right of action. As before indicated, the first view taken of this case suggests that the great lapse of time should prevent a recovery. This presents the temptation to look for some principle of law which can operate as an obstacle, if not a bar, in the way of plaintiff's right of recovery. One which early suggests itself is recourse to the limitation of a year and a day which is applied in many cases. Of this we cannot avail ourselves, because of the adjudged cases. Railroad v. Clarke, supra. Strictly speaking, the bar of the statute of limitations cannot be interposed, because the plaintiff has brought her action within the time to which she is limited by law, if this limitation be viewed in that light.

We are in entire accord with the argument of counsel for defendant in its general features, and can follow with approval the general line of the thought of the argument. Briefly summarized it is that the plaintiff at common law had no right of action. It follows that she now has none, except as given to her by statute. As this right is given only upon conditions, she must again, therefore, bring herself within, or show compliance with, these conditions, before she can assert a right of action. One of the conditions is that the injury to the husband must have been due to the negligence of the defendant. This means actionable negligence, and if the husband had no cause of action grounded upon this negligence, then the widow has none when the injury is followed by his death.

Thus far we are in entire accord with the reasoning. The argument proceeds, however, that, inasmuch as the right of action of the husband had been barred by the statute of limitations, the same bar operates to shut out the plaintiff, and cases have been cited to us from which such a ruling is deducible. This final proposition we cannot bring ourselves to accept. Having a right of action is one thing, and is neither taken away nor in an important sense destroyed by a statute of limitations. Indeed, the latter, when properly applicable, is in itself an acknowledgment of the right of action, and its sole function is to introduce a prohibition against its use. Its command in substantial words is: You have a right of action, but you shall not be permitted to bring it, unless you bring it within the prescribed time. A right of action therefore, and this is the accepted doctrine, once exist-

ing, continues, and may be asserted at any time until it is barred by a statute of limitations.

It follows, therefore, that it can be brought and asserted at any time unless there is such a bar. We have here two rights of action, absolutely distinct and different in character and origin. The husband had a right of action for the legal injury he sustained, at common law. That action, it is true, he could not bring unless he brought it within the time limited by statute. That statute, however, was directed only against his right of action, and had no effect upon other rights of action by other people. The widow also has her right of action, which, as before stated, she did not have at common law. She has it only as the gift of the statute, and she in turn may be limited in the time, and is limited in the time, within which she must bring it. The time limit to her action may, however, and in fact does, differ from the time limit imposed upon the husband's action. When, therefore, we are inquiring whether her action is brought in time, we must look to the statute which regulates that, and not to the statute which regulates the bringing of the action by the husband.

Getting all her rights from the statute, she must, of course, meet its conditions. Let us see what they are and whether she has met them. For clearness and brevity they may be enumerated: (1) Her husband must have been injured; (2) the proximate cause of that injury must have been the negligence of the defendant; (3) death must have resulted from the injury, in the sense of the injury being the proximate cause of the death; and (4) she must have brought her action within one year of the death. The argument concedes that each and every one of these conditions she has fully met.

There is, however, a fifth condition, which presents in itself the whole point of the argument. This condition is that the husband shall have brought in his lifetime no action for the recovery. The argument requires us to read this as meaning that the husband, not only should not have redressed the injury in his lifetime, but also that he had an existing right of action which had not been barred by the statute of limitation up to the time of his death, or in fact up to the instant of time at which the widow's right of action arose.

This presents the point on which, as it seems to us, the whole question pivots. The Legislature might have given a right of action to the widow only in case the husband at the time of his death had an action unbarred by the statute. The real question, however, is not what the statute might have done, but what it did do. Lord Campbell's Act and the statutes in many, or at least some, of the states, in effect does this. The question, however, is whether the Pennsylvania statute does. It is clear that the statute gives no right of action to the widow for death resulting from injuries to the husband, where the husband had redressed his own injury.

There is no inconsistency in holding that a voluntary release is the equivalent of an action brought, because this is the fair meaning of the statute. For some reason the Pennsylvania Legislature chose a different phraseology from that used in the other acts. Whatever the reason, we must interpret the words used, and the words used do not

import as a condition of the plaintiff's right of action that for which the defendant contends. The views of this court have already been sufficiently indicated in Preston v. Western Union Telegraph Co. (D. C.) 246 Fed. 543, and to these views we adhere. The conclusion reached is in accord with that reached in Nestelle v. Railroad (C. C.) 56 Fed. 261.

[6] The further fact may be of value that the Pennsylvania view, differing from that which elsewhere prevails, is that a statute of limitations is a defense to be pleaded. As a consequence it does not afford ground for a demurrer. This is upon the theory that a right of action, once existing, continues to exist, and that the bar of the statute of limitations in no wise affects it, unless that bar is pleaded and interposed as a defense.

The rule for a new trial is discharged, and plaintiff has leave to enter judgment on the verdict.